UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RAVEN GRIFFIN,

        Plaintiff,

                                            Case No. 22-cv-1174-pp

  v.

JOHN MATTEK,
and SHINING STAR CHRISTIAN SCHOOLS,

        Defendants.

## ORDER DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), REQUIRING PLAINTIFF TO HIRE COUNSEL ON BEHALF OF HER SON OR FILE AMENDED COMPLAINT ON HER OWN BEHALF

      The plaintiff, Raven Griffin, filed her eighth case in this district seeking "one million dollars pursuant to the provisions of section 115.80 Wis. Stat., the ADA, the Equality Act of 2010 and Title VI of the Civil Rights Act." Dkt. No. 1 at 1. She alleges that the defendants intentionally discriminated against her minor son while he was a student at Shining Star Christian Schools and violated his Constitutional rights by expelling him for his alleged use of marijuana. Id. at 1, 2. Because the plaintiff is not a lawyer, she cannot litigate the alleged violations of her son's rights on his behalf. The court will give the plaintiff additional time to (1) pay the filing fee or file an amended motion to proceed without prepaying the fee and (2) find a lawyer to represent her son or file an amended complaint asserting only her own claims.

1

**I.    Motion to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

To allow a plaintiff to proceed without prepaying the filing fee, the court first must decide whether she is able to pay the fee; if not, it must determine whether the lawsuit is frivolous, malicious, or fails to state a claim upon which relief can be granted. 28 U.S.C. §§1915(a) and 1915(e)(2)(B)(i). The plaintiff says that she is not employed, is not married and is responsible for supporting her son (age fifteen). Dkt. No. 2 at 1. Currently, the plaintiff's aunt provides her with $400 per month. Id. at 2. The plaintiff claims she has no living expenses (no rent and no groceries) but pays $200 each month for "toileties" and women's personal items, $300 for clothing and $20-50 for medical bills. Id. at 3. The plaintiff has filed several cases in this district and her prior motions to proceed without prepaying the filing fees looked significantly different. For example, last year the plaintiff filed complaints in three cases in which she claimed that she provides support for her son and two younger daughters, receives $794 per month in Social Security benefits, and has monthly expenses of $794 (including $50 per month for her phone). Case No. 19-cv-1070 at Dkt. No. 5; Case No. 21-cv-63 at Dkt. No. 3; Case No. 21-cv-666 at Dkt. No. 2. The pending motion makes no mention of the Social Security income and lists no living expenses. The motion appears to be incomplete; the court will require the plaintiff to file a more complete application if she wants to proceed with the case.

The plaintiff will be responsible for the full filing fee even if, after the court receives more complete information, it decides that she cannot afford to

*pre*-pay the filing fee. Every person whom a court allows to proceed without prepaying the filing fee is still "liable for the full fees," because "all [28 U.S.C.] § 1915(a) does for any litigant is excuse the *pre*-payment of fees." Robbins v. Switzer, 104 F.3d 895, 898 (7th Cir. 1997) (original emphasis); see also Rosas v. Roman Catholic Archdiocese of Chi., 748 F. App'x 64, 65 (7th Cir. 2019) ("Under 28 U.S.C. § 1915(a), a district court may allow a litigant to proceed 'without prepayment of fees,' but not without ever paying fees."). Every time the plaintiff files a new case in federal court she incurs a separate filing fee—even when the court grants her motion to proceed without the prepayment of fees.

Because the pending motion for leave to proceed without prepaying the filing fee is incomplete, the court will deny the motion without prejudice and will allow the plaintiff to file a complete motion.

## II.     Screening

Because the plaintiff has asked to proceed without prepaying the filing fee, the court must decide whether the plaintiff has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915(e)(2)(B)((i)-(iii). To state a claim under the federal notice pleading system, a plaintiff must provide a "short and plain statement of the claim" showing that she is entitled to relief. Federal Rule of Civil Procedure 8(a)(2). A plaintiff does not need to plead every fact supporting her claims; she needs only to give the defendants fair notice of the claim and the grounds upon which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting

3

Conley v. Gibson, 355 U.S. 41, 47 (1957)). At the same time, the allegations "must be enough to raise a right to relief above the speculative level." Id. The court must liberally construe the allegations of her complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

A.  Complaint

The plaintiff alleges that Mr. Bradford, the Administrator of the Shining Star Christian School, and Lindsey Gerke, the principal, contacted her by phone to say that her son had been permanently expelled. Dkt. No. 1 at 1. The plaintiff alleges that Gerke told her that the "students were line up" and that Bradford thought it smelled like "marijuana a street drug known as weed." Id. The plaintiff states that Gerke said there were several students lined up, but that Bradford said that it was the plaintiff's son; Gerke said a student had told Gerke that he (not clear if it was the reporting student or the plaintiff's son) had smoked it on the bus. Id. The plaintiff's son previously had complained to the plaintiff that Bradford had picked on him and released confidential information to other students about her son's disability. Id. The plaintiff claims that on the day of the expulsion, her son was taken to the office and interrogated; she says that Bradford told her that he asked the plaintiff's son five times "if it was his and he said no, and that the son admitted finally it was his by the sixth time asked." Id. at 2. The plaintiff says she stated, "if he told you the first time why would you keep asking him over and over?" Id. The plaintiff says that Bradford responded, "well he should have held his ground." Id. She says that she told Bradford that her son does not have access to drugs

4

and does not use drugs, and says that she asked for an immediate hearing. Id. She asserts that a different teacher said to the student (whom she does not identify) "YOU LOOK LIKE YOU SMOKE." Id.

The plaintiff accuses the defendants of violating the Student Bill of Rights that states a student has a right to be free from "harassment, assault or bullying that included staff and faculty." Id. She asserts that the Student Bill of Rights also says that "all students have the right to deny self incrimination, no student can be forced, under threat of punishment or corrosion into signing or saying anything against their will." Id.

The plaintiff made a verbal and a "written notarized request" to the defendants for all cameras in the hallway and on the bus to be presented at the hearing. Id. She also asserts that she had her son drug tested and the results came back negative. Id. The plaintiff says that she called the bus company and spoke to the manager to ask for the camera footage; she says that the bus company said they never received "no such complaint on the student," but that they could turn over camera footage to the school within a day of receiving a request from the school. Id. The plaintiff alleges that the school "never scheduled an expulsion meeting for the student, never requested camera footage, and never allowed the student back into school." Id.

The plaintiff alleges that the Shining Star Handbook states that "a meeting with the school administration, parents and scholar will take place within 5 days after the scholar's removal from the school," and that when the student's parents submit a written request, the "Executive Director will

respond within 7 days of the submission of the grievance with 3 members of the board or the entire board at the discretion of the chairman." Id. The plaintiff alleges:

> In which none of these protocols were followed for the student, expulsion, a defamation of character, stress, anxiety, discrimination and emotional damage all played a major role against the plaintiff and the plaintiff's son. Due process or redifying [sic] from the defendants was not a priority and was never afforded to the student or the plaintiff. The plaintiff contacted DPI educations for misconduct, as well as the Wisconsin Religious & Independence [sic] Schools Accreditation making them aware of the defendants grievous acts.

Id. at 3.

The plaintiff says that John Mattek, the executive director, stated that he was aware of the situation but "was just now seeing the notarized grievance from last semester, stating his employees never gave it to him." Id. The plaintiff says this phone conversation took place after the "an Intent to Sue was filed." Id. The plaintiff alleges that the defendants took these actions to intentionally and maliciously deprive the plaintiff of her due process rights. Id. at 3. She seeks $1,000,000 for violations of Wis. Stat. §115.80, the ADA, the Equality Act of 2010 and Title VI of the Civil Rights Act. Id. at 1.

The plaintiff says that she attached to the complaint the school handbook and the results of the drug testing; she did not. She attached a Notice of Intent to Sue, which states the following:

> Please be advised that I the parent of Levell Griffin a minor who was in attendance at shing star last year intends to bring a claim in the amount of 1 Million Dollars against Shining Star Christian Schools. This suit is based upon Discrimination, interragation [sic] of a minor, false claims by an employee, violating student rights,

6

> violating his parent right and denial to a fair hearing after request from kicking my son out of school, withholding documents, withholding information submitted to the school to go to proper personnel, emotional stress, violation student disabilities act, and violating student First and Fourth Amendments. Not reporting educators misconduct on Mr. Bradford who inntergated [sic] and coerced a false confession and made up allegations out of my son despite facts, committed fraud against my son, the school failed to report and investigate the incident etc.

Id. at 4. Although the plaintiff did not include any dates in the complaint, the notice of intent to sue is dated March 12, 2021. Id.

The complaint provides no information about the Shining Star Christian School. It does not explain whether the school is public or private. It does not explain whether the school receives federal funding. Although the name implies that the school is a religious school, the complaint does not say so.

B.  Plaintiff Cannot Represent her Minor Son in Federal Court

It appears that the plaintiff seeks damages from the defendants—a school (that may be a religious school) and an employee of the school—for discriminating against her *son* and violating her *son's* constitutional rights. Dkt. No. 1. If the plaintiff is trying to protect her *son's* rights in this federal lawsuit, she cannot do so herself; her son must be represented by a lawyer. The plaintiff may not represent her minor child. See Foster v. Bd. of Educ. of City of Chi., 611 F. App'x 874, 877 (7th Cir. 2015) (non-lawyer parent cannot represent her minor child); Tuttle v. Ill. Dep't of Children & Family Servs., 7 F.3d 238 (7th Cir. 1993) ("Although a parent has a right to litigate claims on his own behalf without an attorney, he cannot litigate the claims of his children unless he obtains counsel."). Because the complaint appears to allege that the

7

defendants violated the plaintiff's *son's* rights, the plaintiff may not proceed with the case unless she retains a lawyer to represent her minor son.

C. Wis. Stat. §115.80

One of the statutes the plaintiff mentions in the complaint is Wis. Stat. §115.80. Wis. Stat. §115.80(1)(a)(1.) says:

> A parent, or the attorney representing the child, may file a written request for a hearing within one year after the refusal or proposal of the local educational agency to initiate or change his or her child's evaluation, individualized education program, educational placement, or the provision of a free appropriate public education, except that, if the local educational agency has not previously provided the parent or the attorney representing the child with notice of the right to request a hearing under this subdivision, he or she may file a request under this subdivision within one year after the local educational agency provides the notice. The division shall develop a model form to assist parents in filing a request under this subdivision.

This is part of Chapter 115 of the Wisconsin Statutes, "State Superintendent; General Classifications and Definitions; Children with Disabilities." Section 115.80 falls under subchapter V, "Children with Disabilities." The statute goes on to say that within fifteen days of the parent filing a written request, the school must have a meeting with the child's parents and the members of the child's individualized education program team. Wis. Stat. §115.80(2m)(a). If that meeting doesn't resolve the parent's issues, a hearing may occur. Id. at §115.80(2m)(e). The statute lays out the requirements for such a hearing.

The complaint alleges that the plaintiff's son had complained to her that Bradford had "released confidential information to other students of the plaintiff's son's disability." Dkt. No. 1 at 1. The complaint does not reveal the nature of the plaintiff's son's disability, whether he had been evaluated,

8

whether he had an individualized education program or placement or whether the Shining Star Christian School receives federal funding (relative to a free appropriate public education under Section 504 of the Rehabilitation Act of 1973). The complaint says that the plaintiff submitted a written request, dkt. no. 1 at 2, but it does not appear that the plaintiff submitted a written request for a hearing because the school refused to, or proposed to, change the plaintiff's son's evaluation, individualized education program, education placement or provision of a free appropriate public education. It appears that the plaintiff is alleging that she made a written request for a hearing to contest what she believed to be the wrongful expulsion of her son.

The facts in the complaint do not support a claim that the plaintiff herself was denied the due process required by Wis. Stat. §115.80, because that process is due to parents who request a hearing based on the school's refusal to, or proposal to, change the evaluation, IEP, placement or provision of free appropriate public education of a child with disabilities. That statute does not describe the process due a parent who believes her child was wrongfully expelled.

D. ADA

Another statute mentioned in the complaint is the "ADA." Dkt. No. 1 at 1. "Title II of the Americans With Disabilities Act (ADA), 42 U.S.C. § 12131 *et seq*, . . . cover[s] both adults and children with disabilities" and "forbids any 'public entity' from discriminating based on disability . . . ." Fry v. Napoleon Community Schools, 580 U.S. 154, 137 S. Ct. 743, 749 (2017). "The ADA

9

prohibits discrimination 'against a qualified individual with a disability because of the disability . . . .'" Basith v. Cook Cty., 241 F.3d 919, 926-27 (7th Cir. 2001). The plaintiff has not alleged that she is an individual with a qualifying disability or that she experienced unlawful discrimination because of her disability, so the complaint does not state an ADA claim on behalf of the plaintiff.

The plaintiff implies that her son is disabled. As the court has explained, the plaintiff cannot represent her son in an ADA suit in federal court, even if she believes that the school discriminated against her son based on his disability.

Nor is it clear that if the plaintiff's son had an attorney and that attorney had alleged that the defendants discriminated against him based on a disability, the ADA applies to the defendants. Title II of the ADA states, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a *public* entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132 (emphasis added). Title III of the ADA prohibits discrimination against disabled individuals in public accommodations but includes an exception for "religious organizations or entities controlled by religious organizations." 42 U.S.C. §§12182(a), 12187. The regulations define the boundaries of the exception:

> The ADA's exemption of religious organizations and religious entities controlled by religious organizations is very broad, encompassing a wide variety of situations. Religious organizations and entities controlled by religious organizations have no obligations under the

10

> ADA. Even when a religious organization carries out activities that would otherwise make it a public accommodation, the religious organization is exempt from ADA coverage. Thus, if a church itself operates a day care center, a nursing home, *a private school*, or a diocesan school system, the operations of the center, home, school, or schools would not be subject to the requirements of the ADA or this part. The religious entity would not lose its exemption merely because the services provided were open to the general public. The test is whether the church or other religious organization operates the public accommodation, not which individuals receive the public accommodation's services.
>
> Religious entities that are controlled by religious organizations are also exempt from the ADA's requirements. Many religious organizations in the United States use lay boards and other secular or corporate mechanisms to operate schools and an array of social services. The use of a lay board or other mechanism does not itself remove the ADA's religious exemption. Thus, a parochial school, having religious doctrine in its curriculum and sponsored by a religious order, could be exempt either as a religious organization or as an entity controlled by a religious organization, even if it has a lay board. The test remains a factual one—whether the church or other religious organization controls the operations of the school or of the service or whether the school or service is itself a religious organization.

28 C.F.R. ch. 1., pt. 36, App'x C (emphasis added).

The plaintiff has sued the "Shining Star *Christian* School." As the court has noted, the complaint does not indicate whether that school is public or private. It does not explain whether the school receives federal funding. It does not explain whether the school is controlled by a religious organization. If that school is operated by a religious organization, the ADA may not apply at all.

The plaintiff has not stated an ADA claim on her own behalf. She may not bring an ADA claim on behalf of her son, and even if she could, it appears that the defendants may not be subject to the ADA.

11

E.  Equality Act of 2010

The complaint also mentions "The Equality Act of 2010." Dkt. No. 1 at 1. however, that act appears to be legislation enacted in the United Kingdom rather than in the United States. See Equality Act 2010, available at https://www.legislation.gov.uk/ukpga/2010/15/pdfs/ukpga_20100015_en. Because the plaintiff and the school appear to be located in the United States, they are governed by United States law. This statute does not apply.

F.  Title VI of the Civil Rights Act

Finally, the complaint mentions Title VI of the Civil Rights Act. Dkt. No. 1 at 1. "Title VI provides that '[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.'" Monroe v. Columbia Coll. Chi.o, 990 F.3d 1098, 1099 (7th Cir. 2021) (quoting 42 U.S.C. §2000d). The complaint does not state a claim under Title VI for several reasons. First, the plaintiff has not alleged that Shining Star Christian Schools is a "program or activity receiving Federal financial assistance," or that it provides any such programs. Second, the complaint does not allege that the defendants discriminated against the plaintiff or her son based on race, color or national origin; it does not identify the race, color or national origin of the plaintiff or her son. Third, even if the school constituted a program or activity receiving Federal financial assistance, and even if it had discriminated against her son based on his race, color or national origin, the court has explained that the plaintiff's son must be

represented by an attorney to pursue that claim; the plaintiff cannot represent him.

### III. Conclusion

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to proceed without prepaying the filing fee. Dkt. No. 2. By the end of the day on **December 2, 2022**, the plaintiff must either file an amended—and complete— motion to proceed without prepaying the filing fee or pay the $402 filing fee. That means the plaintiff must file her amended motion or pay the full filing fee in time for the court to *receive* it by the end of the day on December 2, 2022. If the court does not receive an amended motion or the full filing fee by the end of the day on December 2, 2022, the court may dismiss the case without further notice or hearing for the plaintiff's failure to diligently prosecute the case. Civil L.R. 41(c) (E.D. Wis.).

The court **ORDERS** that by the end of the day on **December 2, 2022**, the plaintiff must either (1) retain an attorney to represent her son regarding any alleged violations of his rights; that attorney must file a notice of appearance by the end of the day on December 2, 2022, or (2) file an amended complaint that alleges *only* violations of the plaintiff's own rights, not those of her son; the amended complaint must be filed in time for the court to *receive* it by the end of the day on December 2, 2022. If the court does not receive either a notice of appearance for an attorney representing the plaintiff's son or an amended complaint alleging only violations of the plaintiff's rights by the end of

the day on December 2, 2022, the court may dismiss this case without further notice or hearing.

Dated in Milwaukee, Wisconsin this 28th day of October, 2022.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**